**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AVI AZOULAI, ET AL., <br> Plaintiffs, <br> v. <br> BMW OF NORTH AMERICA LLC, <br> Defendant. | Case No. 16-cv-00589-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE** <br><br> [Re: ECF 46] |

Humans have been slamming their fingers in doors since doors were invented. The doors on Defendant BMW of North America, LLC ("BMW")'s vehicles are no exception, and Plaintiffs Avi Azoulai, Kamil Cirak, and Reem Haidary (collectively, "Plaintiffs") and/or their family members suffered injuries we are all too familiar with. Rather than seeking to recover for their injuries, Plaintiffs bring this suit grounded in consumer fraud—they allege that the BMW soft close automatic feature ("SCA") is defective because it does not have sensors to detect fingers in the car doors before activating and that BMW unlawfully failed to disclose the alleged defect.

Presently before the Court is BMW's motion to dismiss Plaintiffs' second amended complaint ("SAC") for lack of standing and failure to state a claim. *See generally* Mem. P. & A. ISO Mot. ("Mot."), ECF 46-1. Although the Court acknowledges the severity of the alleged injuries, the Court agrees that Plaintiffs cannot establish standing or state a viable consumer protection or warranty claim and thus shuts the door on this case. For the reasons discussed herein, the Court GRANTS Defendant's motion to dismiss WITHOUT LEAVE TO AMEND.

**I. BACKGROUND**

Plaintiffs, who own or lease a BMW vehicle equipped with the SCA, bring this action on behalf of themselves and all others similarly situated, asserting six causes of action: (1) breach of express warranty; (2) breach of implied warranty; (3) breach of warranty, under the Song-Beverly

1  Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1790, *et seq.*; (4) breach of warranty,

2  under the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. § 2301, *et seq.*; (5)

3  violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et*

4  *seq.*; and (6) violation of the California Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code

5  § 17200, *et seq. See generally* SAC, ECF 41.

Beginning in 2002, BMW began developing, distributing, marketing, advertising, and selling certain models of vehicles with an SCA system.[1] *Id.* ¶ 34. The SCA is an optional, add-on feature, costing approximately $500 to $1,000, that auto-activates and pulls the door of the vehicle to the frame of the automobile and firmly closes it when the door is within 6mm of the closed position. *Id.* ¶¶ 3, 74. Plaintiffs allege that the actual gap between various points of the door and the doorframe may be larger than 6mm when the SCA auto-activates. *Id.* ¶ 39. According to Plaintiffs, when the SCA self-activates, anything in the way of the door is "squeezed and crushed" between the door and the doorframe. *Id.* ¶ 41.

Plaintiffs, who purchased the SCA feature for their vehicle, allege that they and/or their family members suffered physical injuries "because the SCA crushed their fingers while drawing the doors of their Vehicles to the closed position." *Id.* ¶¶ 24, 28, 31. Plaintiff Azoulai, who leased his BMW 750Li from an authorized BMW dealer, suffered a "right finger crush injury" on or about June 16, 2015, when "the door of [his vehicle] was lightly pushed toward the closing position," and the SCA system activated to pull the door completely shut on his finger. *Id.* ¶¶ 23–24. Plaintiff Cirak, who purchased his vehicle from an authorized BMW dealer in Houston, Texas, suffered an injury to his right thumb after he exited the vehicle and the door "slowly recoiled back . . . toward the closing position," and the SCA activated. *Id.* ¶¶ 25, 28. Finally, Plaintiff Haidary, who purchased her vehicle from an authorized BMW dealer in Riverside, California, alleges that her husband was injured when the SCA self-activated and pulled the

---

[1] Plaintiffs allege that the following vehicles are at issue: (1) 2002–2015 BMW 7 Series (excluding G11/G12 model); (2) 2004–2016 BMW 6 Series Coupe and Convertible; (3) 2008–2016 BMW X5; (4) 2009–2016 BMW X6; (5) 2010–2016 BMW 5 Series GT; (6) 2011–2016 BMW 5 Series; and (7) 2013–2016 BMW 6 Series GC. FAC ¶ 36. All of the M models of these vehicle are also at issue. *Id.* The Court refers to these vehicles as the "Class Vehicles."

2

driver's side door closed on his right thumb. *Id.* ¶¶ 29, 31. All three Plaintiffs allege that they would not have suffered those injuries but for the SCA drawing the door to the fully closed position and that BMW was aware of the alleged defect "at all relevant times." *Id.* ¶¶ 24, 28, 31, ¶ 76. Plaintiffs Cirak and Haidary allege that they would not have purchased the vehicle had BMW disclosed the alleged defect. *Id.* ¶¶ 27, 30.

Plaintiff Azoulai originally filed this suit in state court on December 18, 2015, and BMW removed the action to this Court. Notice of Removal, ECF 1. On March 21, 2016, Plaintiff Azoulai filed a first amended complaint. *See* First Am. Compl. ("FAC"), ECF 12. BMW moved to dismiss the FAC for lack of standing, among other purported deficiencies in each of Plaintiff's claims. ECF 13. After hearing argument on the motion to dismiss, the Court granted BMW's motion to dismiss for lack of standing with leave to amend. *See* ECF 32. The Court also pointed out other deficiencies that might preclude the action from moving forward. *Id.* at 2. The SAC, filed on September 22, 2016, added two additional plaintiffs—Kamil Cirak and Reem Haidary. *See generally* SAC. BMW now moves to dismiss the SAC for lack of standing and failure to state a claim. *See generally* Mot.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) and Standing

Article III of the U.S. Constitution's "case and controversy" requirement obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). At the pleading stage, to satisfy the standing requirement plaintiffs must allege: (1) that they have suffered an "injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). At least one named plaintiff must have suffered an injury in fact. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the

3

defendants, none may seek relief on behalf of himself or any other member of the class.") (citation omitted). The party seeking to invoke federal court jurisdiction has the burden of establishing standing. *See Lujan,* 504 U.S. at 561. This threshold requirement applies equally to named plaintiffs in a putative class action. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996). The Ninth Circuit has emphasized that "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation and internal quotation marks omitted).

In addition, under California's UCL, a private person has standing only if he "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011). Similarly, to bring a case under the CRLA, a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT & T Mobility*, *LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (citations and internal quotation marks omitted).

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS

Before addressing BMW's motion, the Court considers BMW's request for judicial notice and Plaintiffs' objections to portions of the declaration of Manual Sattig, which was filed in support of BMW's motion to dismiss. *See* SAC 23–25; Sattig Decl. ISO Mot. ("Sattig Decl."), ECF 46-5; Opp'n 24–25, ECF 49.

While the scope of review on a motion to dismiss is generally limited to the contents of the complaint, under Fed. R. Evid. 201(b), courts may take judicial notice of facts that are "not subject to reasonable dispute." Courts have previously taken judicial notice of documents on which complaints necessarily rely and documents incorporated into the complaint by reference, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Tellabs*, 551 U.S. at 322, and court filings and other matters of public record, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

BMW requests that the Court take judicial notice of the relevant pages of (1) Azoulai's 2014 BMW 750Li owner's manual, Ex. 1 to Mot. ("Ex. 1"), ECF 46-2, (2) Cirak's 2014 BMW X6M owner's manual, Ex. 2 to Mot. ("Ex. 2"), ECF 46-3, and (3) Haidary's 2013 BMW X5 owner's manual, Ex. 3 to Mot. ("Ex. 3"), ECF 46-4; all of which BMW contends are available online. Mot. 24. BMW also asks the Court to take judicial notice of the declaration of BMW employee Manuel Sattig filed by BMW in *Barakezyan v. BMW of N. Am., LLC*, No. 16-cv-173, ECF 16-4 (C.D. Cal. filed Feb. 29, 2016).

As to the set of owner's manuals, BMW contends that the documents are integral to the analysis of Plaintiffs' claims, are explicitly referenced in the SAC, and cannot be subject to reasonable dispute. Mot. 24. BMW thus argues that the Court may take judicial notice of these documents. *Id.* (citing *Kirsopp v. Yamaha*, No. 14-cv-496, 2015 WL 11197829, at *3 (C.D. Cal. Jan. 7, 2015) (taking judicial notice of the existence and contents of one of defendant's owner's manuals)). BMW submits the declaration of Mr. Sattig, a BMW employee, which was originally filed in *Barakezyan*. Mot. 25. BMW assets that the declaration is a court record and relevant to Plaintiffs' standing on the basis of an alleged omission, and therefore may be noticed. *Id.*

Plaintiffs oppose BMW's request for judicial notice as to the owner's manuals to the extent

that it is being introduced to establish the truth of the contents. Mot. 23. In support of their opposition, Plaintiffs note that the manuals are not incorporated into the SAC by reference and that BMW has not established that the owner's manuals cannot be subject to reasonable dispute. *Id.* The Court disagrees with Plaintiffs' assertion that the manuals are not incorporated into the SAC by reference—although not expressly mentioned in the SAC, Plaintiff Azoulai discussed the manuals during the hearing on BMW's first motion to dismiss because he referenced them throughout his opposition papers. *See* Hr'g Tr. 10:14–21, 11:2–5, 17:6–9, ECF 34; *see also* Opp'n to Mot. to Dismiss FAC 1, 6–7, 15, ECF 18. Plaintiffs appear to circumvent this prior discussion by referring to BMW's "other writings" regarding the SCA, without mentioning the manuals anywhere in the SAC. *See* SAC ¶¶ 88, 123–24, 143–44. Nevertheless, the Court agrees that the truth of the documents' contents is not properly the subject of judicial notice. However, the existence of the contents of the manuals—including, for example, any discussions of the safety of the SCA—is properly the subject of judicial notice. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1131 (N.D. Cal 2010) (considering "the actual terms of [defendant's] one-year limited warranty . . . under the incorporation by reference doctrine"). Thus, BMW's request for judicial notice as to these three documents is GRANTED.

Plaintiffs also oppose BMW's request that the Court take judicial notice of Mr. Sattig's declaration, to the extent BMW is attempting to use the contents to support its motion to dismiss under 12(b)(6). Opp'n 23. The Court agrees that it can only take judicial notice of the existence of Mr. Sattig's declaration, not the truth of its contents. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (explaining that courts may judicially notice documents on file in federal or state courts and taking judicial notice of a declaration filed by defendant in an earlier action); *Lee*, 250 F.3d at 690 (finding that a court may take judicial notice of another court's opinion, not for the truth of the facts recited, but for the existence of the opinion). Because the declaration is not relevant if not admitted for the truth of the matters asserted therein, the Court DENIES BMW's request for judicial notice of Mr. Sattig's declaration. Accordingly, the Court need not address Plaintiffs' evidentiary objections to his declaration. *See* Opp'n 24–25.

## IV. DISCUSSION

BMW moves to dismiss all of the claims on various grounds. It first contends that Plaintiffs lack standing on the ground that they fail to state a cognizable injury based on the absence of a safety feature that was not promised. Mot. 4. Second, BMW moves to dismiss all of Plaintiffs' claims for failure to state a claim under 12(b)(6).

### A. Standing

Although Plaintiffs appear to be able to allege a products liability claim based on their claims of actual injury, they expressly decline to assert that claim. *See* SCA ¶ 80. Thus, because Plaintiffs claim only contract damages and consumer fraud the Court must evaluate whether Plaintiffs have alleged facts showing injury in fact derived from those theories. Plaintiffs contend that they have standing to sue for three separate reasons: (1) they were sold unmerchantable vehicles in violation of Song-Beverly and Magnusson-Moss; (2) they were deceived into purchasing or leasing the Class Vehicles through BMW's fraudulent concealment, in violation of the UCL, and fraudulent representations, in violation of the UCL and CLRA; and (3) BMW's description of the SCA created an express warranty that was breached because the SCA did not conform to that warranty. On this basis, they claim economic damages based on diminution of value and overpayment. Opp'n 15–16.

#### i. Plaintiffs' Claimed Economic Injuries

Plaintiffs argue that their economic injuries establish injury in fact for standing purposes. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.* (*In re Unintended Acceleration*), 754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010). But, a plaintiff must still plead facts sufficient to establish these injuries-in-fact, *Lassen v. Nissan*, No. 15-6491, 2016 WL 5868101, at *9 (C.D. Cal. Sept. 30, 2016). Plaintiffs have not done so here.

In this case, all of Plaintiffs' claims are premised on allegations that the lack of a sensor on the SCA is a design defect, but this is not a products liability action. Rather, Plaintiffs' claims sound in consumer fraud and they seek contract-oriented economic damages: that BMW wrongfully induced Plaintiffs to purchase and/or lease their vehicles by concealing a material fact (the alleged defect), and that Plaintiffs would have paid less for their vehicles or would not have

7

purchased or leased them at all had they known of the defect. *See* Opp'n 17 (citing SAC ¶ 74).

In considering whether Plaintiffs have adequately alleged facts supporting Article III standing, the Court is satisfied that Plaintiffs have shown concrete harm to themselves—they allege that they or their family members have suffered physical injury when their car doors closed on their fingers. As noted above, however, Plaintiffs' claims for damages expressly exclude consideration of these injuries. Thus, although Plaintiffs have alleged sufficient facts to demonstrate that their injuries are not hypothetical, those injuries do not support standing to sue on the claims asserted here. Thus, this case is analogous to those cases in which "courts have rejected for lack of standing or injury attempts to recast no-injury products-liability claims (which are not cognizable) as consumer fraud claims for contract-like economic damages (which *may* be cognizable)." *Lassen*, 2016 WL 5868101, at *9 (emphasis in original) (citing cases). And as in those cases, Plaintiffs' attempt to hybridize products liability and consumer fraud doctrines here fails because ultimately, under the facts pled, Plaintiffs have not suffered any injury in fact related to the claims at issue.

Plaintiffs argue that they suffered an injury in fact because they bargained for and paid for vehicles with an SCA system that would "safely" close the door "pursuant to BMW NA's express warranty," which they did not receive. On this basis, they claim that they overpaid for their vehicles and the claimed defect caused a diminution in value. SAC ¶¶ 74, 78. These allegations, however, do not support standing because, as discussed more fully below, Plaintiffs have not pled a design defect that is actionable in the consumer fraud context. And, "absent a defect, Plaintiffs lack standing." *Lassen*, 2016 WL 5868101, at *10.

Plaintiffs' reliance on the diminution in value theory fails for another independent reason. In *Lassen*, the Court rejected the plaintiffs' claims that the vehicles diminished in value due to the alleged defect. *Id.* at *9. The court recognized that diminution in value could theoretically be a cognizable injury, but suggested that it could only establish standing where widespread reports of the defect could decrease market demand for the vehicle. *Id.* (citing *In re Unintended Acceleration*, 754 F. Supp. 2d at 1162 (finding standing where plaintiffs pled widespread knowledge about defect, market value declined, and plaintiffs sold vehicles at a loss)); *Boysen v.*

8

*Walgreen Co.*, No. C 11-6262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (dismissing the plaintiff's claim that defendant's failure to disclose the presence of arsenic and lead in a beverage described as "healthy" and "100% juice" caused the plaintiff an economic injury because the plaintiff could only allege that "the levels of lead and arsenic in defendant's product were unsatisfactory to him," and not that the juice "function[ed] less than advertised").

Here, as in *Lassen*, the SAC contains only conclusory allegations that Plaintiffs' vehicles declined in value because the SCA lacked a sensor. SAC ¶ 78; *Lassen*, 2016 WL 5868101, at *9. Also as in *Lassen*, the SAC does not contain any allegation that the problems Plaintiffs raise with the SCA design have received attention from the national media. It therefore follows that the diminished use and reduced fair market value that such attention may cause has not occurred here. *See Lassen*, 2016 WL 5868101, at *9. This deficiency, standing alone, would not cause the Court to grant this motion without leave to amend. But, as discussed below, Plaintiffs' failure to allege an actionable defect is fatal to their claims, and amendment would not cure that deficiency.

### ii. Failure to Allege an Actionable Defect

As noted above, Plaintiffs' standing and all of their claims rest on the premise that vehicles equipped with the SCA system that lack a sensor are defective. However, a plaintiff that fails to allege a defect actionable in the consumer fraud context lacks standing to assert consumer fraud and warranty claims. *Lassen*, 2016 WL 5868101, at *10; *Birdsong* 590 F.3d at 961. As suggested in the discussion above, the Court finds that the lack of a sensor in the SCA system does not constitute a design defect in the consumer fraud context. Indeed, neither the SAC nor Plaintiffs' opposition articulates a plausible legal theory of defect: the SCA did not malfunction or fail and Plaintiffs did not discuss any theories, such as those from the products liability context, whereby a properly-functioning product could nevertheless be deemed defectively designed.

Two cases, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009), and *Lassen v. Nissan*, are instructive in demonstrating that Plaintiffs cannot allege an actionable defect in the consumer fraud or warranty context, and thus lack standing to pursue the action. In *Birdsong*, the plaintiffs alleged that their iPods were defective because they could be played at volumes that could cause hearing loss, yet "lacked 'noise isolating or cancelling properties,' and [ ] lack[ed] any

9

volume meter that [would] inform users they are listening at dangerous levels." *Birdsong*, 590 F.3d at 958. Like this case, the *Birdsong* plaintiffs couched their claims for economic loss in terms of fraud, breach of warranty, the UCL, and similar theories.[2] *Id.* at 961. The Ninth Circuit declined to recognize the claimed defect, finding that the plaintiffs failed to plead that the iPods malfunctioned or "failed to do anything they were designed to do," and instead they "merely suggest[ed] possible changes to the iPod which they believe[d] would make the product safer." *Id.* at 959. Thus, although plaintiffs' alleged economic harm "center[ed] on their claim that the iPod has a defect (an inherent risk of hearing loss)," they "failed to allege any cognizable defect," because "plaintiffs' alleged injury in fact [was] premised on the loss of a 'safety' benefit that was not part of the bargain to begin with." *Id.* at 961–62. The Ninth Circuit concluded that absent a cognizable defect, plaintiffs failed to plead an injury in fact, and therefore did not have standing to pursue their claims.

Similarly, in *Lassen*, the plaintiffs claimed that their vehicles' keyless fob systems were defective because they could be used in a dangerous way, and they lacked a safety feature—Auto-Off—that could mitigate that danger. 2016 WL 5868101, at *10. Therefore, the plaintiffs argued that the automaker defendants had a presale duty to disclose the alleged defect. *Id.* The court granted the defendants' motion to dismiss after finding that the plaintiffs had not pled a design defect that was actionable in the consumer fraud context, among other reasons. *Id.* at *10. The court examined the differences between products liability law and consumer fraud law, and determined that products liability design defect standards do not readily transfer to the consumer fraud context because they serve different purposes. *Id.* at *12. In light of the different purposes, the court concluded that "[w]hether a product is defectively designed and therefore triggers a duty to disclose for purposes of consumer fraud actions cannot be coextensive with the retrospective, open-ended design defects test of products liability law." *Id.* at *14. The court found that this was particularly true when the product at issue functions as designed—*i.e.*, it functions as it was

---

[2] In *Birdsong*, the Ninth Circuit discussed the fact that alleged injury, hearing loss, was only hypothetical. *See Birdsong*, 590 F.3d at 961. In contrast, here, Plaintiffs allege actual injury. Because Plaintiffs claims are not based on these injuries, this distinction is not dispositive.

10

designed to, and thus plaintiffs did not bargain for the desired safety feature. *Id.* As a result, the court rejected the plaintiffs' argument that sellers should be held liable for consumer fraud based on allegations that a properly functioning product was defective because there is a potentially safer design. *Id.* For this reason, the Court rejected plaintiffs' claims for lack of standing. *Id.* at *11.

As in *Birdsong* and in *Lassen*, Plaintiffs here claim that there is a defect because the product for which they paid $500 to $1000 lacks a feature—a sensor—that they believe would make the vehicles safer. SAC ¶ 43; Opp'n 17. However, Plaintiffs do not allege that this feature was bargained for. Instead, Plaintiffs seek to force BMW to implement an "alternative design," which "can only be established by retrospective standards of products liability law." SAC ¶ 3; *Lassen*, 2016 WL 5868101, at *13. Ultimately, however, "[t]hat 'defectiveness' cannot also establish a defect for the purposes of consumer [ ] law . . . ." *Id.* "It is well established that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct." *Barakezyan v. BMW of N. Am., LLC.*, No. CV 16-173, 2016 WL 2840803, at *4 (C.D. Cal. Apr. 7, 2016) (collecting cases).

Plaintiffs' reliance on *Gingery v. City of Glendale*, 831 F.3d 1222 (9th Cir. 2016), to argue that they have sufficiently alleged injury in fact, is unavailing. In *Gingery*, the Ninth Circuit found that a Japanese-America who wanted to use a city's public park and adult recreation center but avoided doing so because he disagreed with and was offended by the city's public monument commemorating Korean women who allegedly were forced to serve as "Comfort Women" in Japan before and during World War II, had suffered an injury-in fact. 831 F.3d at 1227. Analogizing his case to cases brought under the Establishment Clause and environmental cases, the Ninth Circuit concluded that the plaintiff's "inability to unreservedly use" the public land constituted an injury in fact. *Id.* Plaintiffs here fail to realize, however, that the injury-in-fact inquiry is specific to the cause of action alleged. Although the Ninth Circuit's ruling in *Gingery* is clear, *Birdsong* and *Lassen* are equally clear with respect to what constitutes an injury-in-fact in a consumer fraud case.

Because Plaintiffs cannot allege an actionable defect, their contentions that they have standing to sue because they were sold unmerchantable vehicles in violation of the Song-Beverly

11

and Magnuson-Moss warranty acts; they were deceived into purchasing and/or leasing the Class Vehicles through BMW's fraudulent concealment and fraudulent representations; and BMW breached an express warranty, are insufficient. *See* Opp'n 15–16. Indeed, Plaintiffs fail to meaningful address *Lassen* or *Birdsong*. They attempt to distinguish *Lassen* by arguing that there, only the owners, who are trained drivers, use the keyless fob, whereas here, anyone who enters or exits the vehicles uses the doors of the Class Vehicles. Opp'n 9. This, however, was not the test the court applied in *Lassen*. Moreover, the Court is unclear why this distinction matters. As the Court stated at the hearing, any person, by the time they are old enough to get near a car door, knows that you do not put your finger in a door.

For the foregoing reasons, BMW's motion to dismiss for lack of standing is GRANTED.

**B. Rule 12(b)(6)**

Although the Court concludes that Plaintiffs lack standing, the Court will also rule on BMW's motion to dismiss each claim alleged in the SAC. Plaintiffs' claims primarily rely on their allegations that BMW made various misrepresentations and omissions. Specifically, Plaintiffs claim that BMW affirmatively misrepresented that the SCA "safely" draws the door of the Class Vehicles to the closed position. SAC ¶¶ 6, 179, 199. Plaintiffs also allege that BMW failed to disclose the alleged defect—the lack of a sensor—that caused their injuries, and thus actively concealed that the SCA is not safe. SAC ¶¶ 53, 54, 58. Accordingly, Plaintiffs claim that BMW violated the UCL and the CLRA, and breached its express and implied warranties.

### iii. Claims for Breach of Express Warranty, Violation of the CLRA, and Violation of the UCL

Misrepresentation claims under the UCL and the CLRA, as well as claims for breach of an express warranty, require a showing that alleged statements or omissions are "likely to deceive" reasonable consumers. *See Freeman v. Time, Inc.*, 68 F. 3d 285, 289 (9th Cir. 1995) (misrepresentation claims under UCL require a showing that "members of the public are likely to be deceived" (citation and internal quotation marks omitted)); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (holding that claims based on misrepresentation under the CLRA are subject to the same standard applied to such claims under

12

the UCL); Cal. Com. Code § 2313(2) ("an affirmation merely of the value of the [product] or a statement purporting to be merely the seller's opinion or commendation of the goods" does not create an express warranty). Accordingly, because Plaintiffs' UCL claims are based on alleged violations of the "fraudulent," "unlawful," and "unfair" prongs, which are in turn based on alleged violations of the CLRA, in order to state a claim under any of the asserted causes of action, Plaintiffs must allege facts sufficient to show that the alleged affirmative misrepresentations and omissions are "likely to deceive" reasonable consumers.

Because the "reasonable consumer" inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement amounts to "mere puffery" or "in the context, is such that no reasonable consumer could be misled" in the manner claimed by the plaintiff. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (citing *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)). Likewise, where the complaint does not allege facts showing that an alleged omission is "likely to deceive" reasonable consumers, claims may be dismissed as a matter of law. *See Oestreicher v. Alienware Corp.*, 322 F. App'x 489 (9th Cir. 2009) (affirming dismissal of UCL and CLRA claims for failure to disclose an alleged defect in notebook computers because "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue" and neither was alleged in the complaint"); Dismissal Order, *Vitt*, No. CV 06-7152, at *6 (collecting cases).

### a. Claims Based on Affirmative Misrepresentations

BMW claims that Plaintiffs' affirmative misrepresentation claim should be dismissed because the statement that the SCA operates "safely" constitutes puffery and, therefore, is not actionable under the UCL or the CLRA, and does not create an express warranty. Mot. 20–21.

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1139 (C.D. Cal. 2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)); *Barakezyan*, 2016 WL 2840803, at *6 (holding that puffery does not create an express warranty). To be actionable, a statement must be "specific and measurable" and

13

capable of being proven true or false. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1135, 1145 (9th Cir. 1997).

Contrary to what Plaintiffs contend, there is nothing "specific and measurable" about the word "safely." *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (affirming dismissal on basis that descriptors such as "durable," "reliable," and "high performance" were not actionable); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, (9th Cir. 2001) (finding statement that passengers on defendant's cruises "would be safely and adequately served" "devoid of any meaningful specificity, amounting at most to . . . mere puffing") (applying Texas law); *Zaccagnino v. Nissan N. Am., Inc.*, No. 14 Civ. 3690, 2015 WL 3929620, at *4 (S.D.N.Y. June 17, 2015) ("[P]romoting a car as generally safe and reliable is too general a representation to be proven true or false. It is puffery[.]"), *overruled on other grounds by New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 n.26 (S.D.N.Y. 2015). Generic sales talk like this is not actionable even if a consumer subjectively believes it means something more specific, as Plaintiffs allege here. *Vitt*, 469 F. App'x at 607 (noting that "durable" does not "claim or imply that the [computer's] useful life will extend 'for a couple of years'"); *see also In re iPhone 4S Consumer Litig.*, 637 F. App'x 414, 415–16 (9th Cir. 2016) ("Failure to meet Plaintiffs' undefined expectations . . . does not render [the manufacturer's] representations misleading."). Thus, the statement was not likely to deceive a reasonable consumer and is not actionable under the UCL or the CLRA, and does not constitute a violation of an express warranty. Accordingly, the Court GRANTS BMW's motion to dismiss Plaintiffs' claims based on affirmative misrepresentations.

*b. Claims Based on Omissions*

Plaintiffs also contend that BMW had an affirmative duty to disclose the alleged defect. Opp'n 4–7. BMW, however, argues that Plaintiffs cannot claim they were deceived by the lack of a safety feature, which the manufacturer never promised, in a fully functional product that works precisely as the manufacturer said it would. Mot. 18.

To state a claim for failing to disclose a defect under the CLRA or the UCL, Plaintiffs must allege "(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; and (3) a causal connection between the alleged defect and the alleged safety hazard; and

14

that the manufacturer knew of the defect at the time a sale was made." *Williams v. Yamaha Motor Co. Ltd.*, No. 15-55924, 2017 WL 1101095, at *7 (9th Cir. Mar. 24, 2017) (citations and internal quotation marks omitted); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835–36 (2006) (explaining that under the CLRA, any supposed defect must pose "safety concerns"); *see also Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (holding that under the UCL, there is no duty to disclose any defect that is not contrary to any affirmative statements made by the seller and does not affect the safety of the product); *Birdsong*, 590 F.3d at 958 (rejecting claim under the Song–Beverly Act where plaintiffs did not allege that iPods were unsafe for listening to music or otherwise defective). Because Plaintiffs have failed to allege that the SCA contained a defect, they have also failed to state a claim under the CLRA or the UCL based on alleged omissions.

However, even if Plaintiffs were able to establish the existence of a defect, their claims would still fail because they are unable to allege the existence of an "unreasonable" safety risk. *See Williams*, 2017 WL 1101095, at *9. As is perhaps obvious, the purported defect merely exacerbates the *normal and expected* dangers posed by a car door. Slamming one's finger in a car door, while plausibly hazardous, is an anticipated risk of using any door, and is a risk of which BMW expressly warns consumers. *See, e.g.*, Ex. 1 to RJN at 3 ("Make sure that the closing path of the door is clear; otherwise, injuries may result."). Indeed, even if a driver or passenger does not intend to close the door, the door may recoil and close on one's finger, as is suggested to be the case with Plaintiff Haidary's husband. *See* Opp'n 13; SAC ¶ 31. Plaintiffs have failed to allege how this risk is different from the normal risk of using a car door. The nature of the alleged defect as being primarily one of exacerbating a preexisting risk "rather than the manifestation of a wholly abnormal condition weighs against its characterization as 'unreasonable.'" *Williams*, 2017 WL 1101095, at *9. Accordingly, Plaintiffs cannot state a viable claim for any alleged omissions.

### iv. Claims for Breach of Implied Warranty and Violations of the Song-Beverly and Magnuson-Moss Acts

Plaintiffs also bring claims for breach of implied warranty and violations of the Song-Beverly and Magnuson-Moss Acts. The Court addresses each in turn below.

First, Plaintiffs allege that BMW breached the implied warranty that these vehicles are merchantable and fit for their intended purpose by offering, selling, or leasing the Subject Vehicles that, by their design and construction, contained defects which made the SCA inherently dangerous. SAC ¶¶ 138, 148. Plaintiffs also claim that BMW breached these warranties by failing to warn Plaintiffs and the class members of the alleged defect, of which BMW was aware at all times. *Id.* Because the Court already found that Plaintiffs have failed to allege an actionable defect or to state a claim for any alleged omissions, Plaintiffs' implied warranty claim fails. Further, because the Court has found that Plaintiffs have not alleged that BMW breached the implied warranty of merchantability, they cannot state a claim under the Song-Beverly Act. *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 25 (2005). Accordingly, the Court GRANTS BMW's motion to dismiss this claim.

Finally, Plaintiffs cannot state a claim under Magnuson-Moss because they have not pled a warranty claim under state law. *Daugherty*, 144 Cal. App. 4th at 833. Accordingly, this claim must be dismissed as well.

### C. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith, or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Three of the factors—undue delay, bad faith, or dilatory motive—are not applicable here because the present determination on whether to grant leave does not stem from a motion for leave by Plaintiffs and there is no evidence or allegation of "undue delay, bad faith or dilatory motive" over the course of this case. Undue prejudice to the opposing party also has limited application

16

here because the complaint has given BMW fair notice of the asserted claims. The Court, however, finds the remaining factors—repeated failure to cure deficiencies by amendments previously allowed, and futility of the amendment—dispositive. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Plaintiffs have already had one opportunity for substantive amendments to address the same deficiencies previously identified by BMW's first motion to dismiss and this Court's order thereon. As such, there is a repeated failure to cure the deficiencies. Further, in the various iterations of the complaint and opposition to the motions to dismiss, there appears no set of facts that could constitute sufficient allegations in support of the claims dismissed here. Accordingly, the Court finds that amendment would be futile.

## V.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant BMW's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

Dated: April 13, 2017

_____
BETH LABSON FREEMAN
United States District Judge